Cite as 2025 Ark. App. 17

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-24-63

| | | |
|---|---|---|
| | | Opinion Delivered January 15, 2025 |
| JAMES KELLY | APPELLANT | APPEAL FROM THE SEVIER COUNTY CIRCUIT COURT [NO. 67CR-23-1] |
| V. | | HONORABLE TOM COOPER, JUDGE |
| STATE OF ARKANSAS | APPELLEE | REBRIEFING ORDERED; MOTION TO WITHDRAW DENIED |

**KENNETH S. HIXSON, Judge**

Appellant James Kelly appeals after he was convicted by a Sevier County Circuit Court jury of simultaneous possession of drugs and firearms, possession of methamphetamine with purpose to deliver, and possession of drug paraphernalia.[1] He was sentenced as a habitual offender to serve an aggregate of six hundred months' imprisonment in the Arkansas Division of Correction. Appellant's appellate counsel has filed a no-merit brief and a motion to withdraw as counsel pursuant to Arkansas Supreme Court Rule 4-3 and *Anders v. California*, 386 U.S. 738 (1967), asserting that this appeal is wholly without merit. The motion is accompanied by a brief that is alleged to include (1) a statement of the case containing all rulings adverse to the appellant made by the circuit court and the page

---

[1]He was acquitted of possession of a firearm by a restricted person.

number where each adverse ruling is located in the appellate record and (2) an argument section that consists of a list of all rulings adverse to the defendant made by the circuit court on all objections, motions, and requests made by either party with an explanation as to why each adverse ruling is not a meritorious ground for reversal. The clerk of this court mailed a copy of counsel's motion and no-merit brief to appellant's last-known address informing him of his right to file pro se points for reversal. Appellant has filed pro se points, and consequently, the attorney general has filed a reply brief. However, appellate counsel's no-merit brief is not in compliance with *Anders* and Rule 4-3(b)(1).

## I. *Relevant Facts*

Appellant was charged by amended criminal information with simultaneous possession of drugs and firearms, a Class Y felony, in violation of Arkansas Code Annotated section 5-74-106 (Repl. 2016); possession of methamphetamine with purpose to deliver (10g to 200g), a Class A felony, in violation of Arkansas Code Annotated section 5-64-420(a)(b)(3) (Supp. 2023); possession of a firearm by a restricted person, a Class B felony, in violation of Arkansas Code Annotated section 5-73-103 (Supp. 2023); and possession of drug paraphernalia, a Class D felony, in violation of Arkansas Code Annotated section 5-64-443 (Supp. 2023). The State further stated that appellant's sentence should be enhanced as a habitual offender pursuant to Arkansas Code Annotated section 5-4-501 (Supp. 2023).

At appellant's January 5, 2023, arraignment hearing, appellant argued that his constitutional right had been violated and requested that the sheriff give him "the body cam and dash cam and everything subpoenaed for this purpose[.]" The circuit court denied his

2

request and stated, "Mr. Kelly, this is not the place or time to be talking to the sheriff about what you're asking about. Now if you're wanting to subpoena information in defense of your case, that's what you discuss with your attorney."

At a pretrial hearing on August 24, 2023, appellant asked that he be allowed to "change attorneys because [defense counsel] started telling me that what I done did and I done told him that I'm innocent, but he telling me what they got on me; that ain't helping me, and done said this more than once." The circuit court denied his request for a different attorney but told him that he was free to retain his own attorney before trial if he was not satisfied with his current public defender.

On October 12, 2023, appellant's trial counsel requested a suppression hearing "regarding the constitutionality of his seizure of his phone." Trial counsel later clarified that he moved to "suppress the search of the cellphone." At the suppression hearing, Special Agent John Jones testified. He explained that he and Agent Harper had been patrolling and looking for criminal narcotics activity on November 25, 2022. Agent Jones explained that he came into contact with a man at a car wash who told them he had just purchased some methamphetamine from appellant. Agent Jones explained that he knew appellant had an active warrant for his arrest. Therefore, he asked this man to call appellant and ask to purchase more methamphetamine, which the man did while Agent Jones listened. The man arranged for appellant to deliver the methamphetamine to him at the Dollar General in Horatio, Arkansas. Agent Jones drove to, and parked near, appellant's residence while Agent Harper and the man traveled to Dollar General.

Agent Jones testified that he watched appellant leave his residence on a bicycle, and he then stopped appellant. He informed appellant that he was under arrest and performed a search incident to arrest. During that search, Agent Jones seized appellant's cell phone and a small bag of methamphetamine. After advising appellant of his *Miranda* rights, appellant told Agent Jones that he had drug paraphernalia in the RV in which he resided. Agent Jones obtained a search warrant for the RV, and after his search, he transported appellant back to the station. Appellant waived his rights again and gave a recorded statement.

On August 4, 2023, officers obtained a search warrant to search the contents of the phone that was seized during appellant's arrest. Copies of the warrant and application were admitted into evidence without objection. The affidavit accompanying the application detailed the man's call to appellant asking him to bring methamphetamine to Dollar General. It further noted that appellant was carrying methamphetamine when he was arrested, that appellant said he had drug paraphernalia at his residence, that appellant admitted selling methamphetamine because he had lost his job, and that a cell phone was seized from appellant when he was arrested.

Appellant testified that he objected to the search of his cell phone because he "was in the street when they got me and they violated my Fourth Amendment rights." He claimed that he did not live in the RV, that there was no probable cause to "search there," and that the "original search warrant" had expired. When asked whether he had any other objections to the search of his cell phone, appellant stated that he did not.

4

The circuit court denied appellant's motion to suppress and stated the following:

I find there was probable cause pursuant to the search warrant, the search of the phone based on, not so much the language that is in the search warrant. That is just standard language when it just talks about all search warrants, or all defendants use that. I am not basing it on that. I am basing it on the language in the search warrant wherein he was contacted by, James Kelly was contacted by a cell phone, and James Kelly started responding to it, just as the officer testified. I think that gives probable cause, along with the other things in there, to search the Defendant's phone.

At the conclusion of the hearing, the circuit court explained the procedure for trials after COVID-19 since appellant's trial counsel had not recently had a trial before that court. Appellant thereafter asked the court, "How are you-all gonna give me an attorney that ain't had a jury trial in so long and y'all are trying to tell me that he is fit to be my lawyer?" The circuit court again denied appellant's request and simply stated that it would see everyone at trial and concluded the hearing.

A jury trial was held on October 16, 2023. Agent Jones's testimony was consistent with his testimony at the suppression hearing, which we will not repeat. Agent Jones reiterated that appellant acknowledged he had methamphetamine on him when he was arrested and admitted he had drug paraphernalia inside his RV. At that time, appellant further admitted he was going to Dollar General to sell the methamphetamine he had on him. After obtaining a search warrant to search the RV, Agent Jones went to appellant's residence. He explained that appellant's girlfriend was there at the time. He found three firearms, more methamphetamine, and drug paraphernalia (including bags, scales, and a smoking device) inside. The methamphetamine was found inside a YETI can that had a fake top on it. Many pictures of the RV and the evidence seized were admitted into evidence

without objection. However, trial counsel objected to the admission of a picture of the methamphetamine on a digital scale at Agent Jones's office, which he used to "get a presumptive weight of the substance." Trial counsel argued that the scale was not calibrated and did not meet the "scientific criteria." He further argued that a person from the Arkansas State Crime Laboratory (ASCL) should be the one to testify as to any weight and that the reading on the scale needed to be covered up. The circuit court overruled the objection and stated that the objection went to "weight, not the admissibility." Trial counsel further objected on the basis of hearsay, and the circuit court overruled on that basis without further comment.

A portion of appellant's recorded station interview after he was arrested was played for the jury. During the interview, appellant admitted that he sells methamphetamine and that he had two sets of scales inside the RV even though Agent Jones found only one inside the RV. Appellant explained that although he did not own the RV, he lived there, and the electricity bill was in his name. He further admitted that the methamphetamine found was his and denied that any of it belonged to his girlfriend. Regarding the three firearms, appellant explained that he had the rifle because he was repairing the stock for friend, he acquired one pistol in exchange for a loan he made to someone that he never collected, and the small derringer pistol came from someone who now lives in Oklahoma.

Agent Jones testified that he used extraction software to search the cell phone that was seized when appellant was arrested. The extraction report was admitted into evidence without objection. During Agent Jones's testimony regarding the contents of the report,

6

appellant's counsel objected and argued that "we are kind of getting into the 404(b) . . . [and] the prejudice outweighs any value." The objection was overruled. Agent Jones testified that the report included several messages arranging sales of narcotics and that appellant had used the code word "groceries" when he was referring to narcotics.

Officer Scott Bradshaw testified that he transported some of the evidence obtained in this case to the ASCL, and Agent Greg Harper testified that he retrieved that evidence after the ASCL had completed its analysis.

Marissa Teske, a forensic chemist at the ASCL, confirmed that one of the bags containing a crystalline substance tested positive for methamphetamine. Appellant's trial counsel objected to her testimony and argued that Ms. Teske should not be allowed to use the notes she had with her. The circuit court overruled the objection and explained that she could use any notes she contemporaneously made during her analysis to refresh her memory. Ms. Teske stated that she received a total of six bags of a crystalline substance and one bag of tablets. The bag that tested positive for methamphetamine weighed 16.9418 grams. She explained that she did not test any of the other bags because that bag had weighed over ten grams, and she knew that all the bags retrieved did not weigh more than 200 grams.

After the State rested its case, appellant's trial counsel moved for a directed verdict and renewed his motion for a directed verdict after he rested without presenting any witnesses. Trial counsel argued that the "State ha[d] not proved their case beyond a prima facie case." The circuit court denied his motion, and the jury found appellant guilty of simultaneous possession of drugs and firearms, possession of methamphetamine with

7

purpose to deliver, and possession of drug paraphernalia.[2]  He was sentenced as a habitual offender to serve an aggregate of six hundred months' imprisonment in the Arkansas Division of Correction.  This appeal followed.

## II. *Briefing Deficiencies*

Arkansas Supreme Court Rule 4-3(b)(1) requires that the argument section of a no-merit brief contain "a list of all rulings adverse to the defendant made by the circuit court on all objections, motions and requests . . . with an explanation as to why each adverse ruling is not a meritorious ground for reversal."  The brief's statement of case and facts is also required to contain "all rulings adverse to the defendant made by the circuit court and the page number where each adverse ruling is located in the appellate record."  Generally speaking, if a no-merit brief fails to address all the adverse rulings, it will be sent back for rebriefing.  *Sartin v. State*, 2010 Ark. 16, at 4, 362 S.W.3d 877, 880.  The requirement for briefing every adverse ruling ensures that the due-process concerns in *Anders* are met and prevents the unnecessary risk of a deficient *Anders* brief resulting in an incorrect decision on counsel's motion to withdraw.  *Sartin*, 2010 Ark. 16, at 8, 362 S.W.3d at 882.  For these reasons, a no-merit brief in a criminal case that fails to address an adverse ruling does not satisfy the requirements of Rule 4-3, and rebriefing will be required.  *Id.*

Appellant's appellate counsel discusses several adverse rulings that occurred in this case and provides an explanation as to why each of those adverse rulings is not a meritorious

---

[2]He was acquitted of possession of a firearm by a restricted person.

ground for reversal. However, we note that there are at least two adverse rulings that appellate counsel failed to include in either the statement of the case and facts or the argument section of his no-merit brief. The first adverse ruling not addressed occurred at appellant's January 5, 2023, arraignment hearing. Appellant argued that his constitutional right had been violated and requested that the sheriff give him "the body cam and dash cam and everything subpoenaed for this purpose[.]" The circuit court denied his request and stated, "Mr. Kelly, this is not the place or time to be talking to the sheriff about what you're asking about. Now if you're wanting to subpoena information in defense of your case, that's what you discuss with your attorney." Appellate counsel failed to address this adverse ruling in his no-merit brief.

The second adverse ruling not addressed occurred at the conclusion of the suppression hearing. The circuit court explained its post-COVID-19 trial procedure to appellant's trial counsel since counsel had not recently had a trial before the court. Appellant thereafter asked the court, "How are you-all gonna give me an attorney that ain't had a jury trial in so long and y'all are trying to tell me that he is fit to be my lawyer?" The circuit court denied appellant's second request for new counsel and simply stated that it would see everyone at trial and concluded the hearing. Appellate counsel failed to address this second request for new counsel in his no-merit brief.

Accordingly, we order appellate counsel to cure these deficiencies by filing a substituted brief within fifteen days from the date of this opinion. The deficiencies we have identified should not be considered exhaustive, and counsel is encouraged to review *Anders*

and Rule 4-3 regarding the requirements of a no-merit brief. We express no opinion as to whether the new brief should be a no-merit brief pursuant to Rule 4-3 or should be on meritorious grounds. If a substituted no-merit brief is filed, our clerk will forward counsel's motion and brief to appellant, and he will have thirty days within which to raise additional pro se points in accordance with Rule 4-3. The State will likewise be given an opportunity to file a reply brief if further pro se points are made. Appellant and the State may elect to stand on the original pro se points and reply brief in this case. *See Jester v. State*, 2018 Ark. App. 360, 553 S.W.3d 198.

Rebriefing ordered; motion to withdraw denied.

BARRETT and BROWN, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.